KAZEROUNI LAW GROUP, APC
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
Elizabeth Wagner, Esq. (317098)
elizabeth@kazlg.com
1303 East Grand Avenue, Ste. 101
Arroyo Grande, CA 93420
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Ste. 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff*,
Ali Alikhani

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ALIKHANI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, *ET SEQ.***<br><br>JURY TRIAL DEMANDED |

# INTRODUCTION

1. The United States Congress has also found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Plaintiff ALI ALIKHANI ("Plaintiff"), through Plaintiff's attorneys, brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Defendant EQUIFAX INFORMATION SERVICES LLC ("Defendant") with regard to Defendant's reporting of erroneous negative and derogatory reports to Plaintiff's credit reports, as that term is defined by 15 U.S.C. § 1681a(g); Defendant's willful and negligent failure to properly investigate the repeated disputes of Plaintiff concerning the inaccurate data Defendant is reporting in consumers' credit files, and Defendant's failure to correct such, which Defendant knew or should have known was erroneous and which caused Plaintiff damages.

3. More specifically, Plaintiff brings this Complaint, by and through Plaintiff's attorneys, for damages arising out of the systematic issuance of erroneous credit

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

reports by Defendant. Defendant has erroneously reported continual monthly payment obligations on accounts that have been closed and paid in full.

4. Defendant has negligently and willfully failed to employ reasonable procedures—including procedures readily available to them of which they are aware—to ensure maximum possible accuracy of their credit reports.

5. Plaintiff make these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant occurred in California.

8. Any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1367 for any supplemental state claims.

11. This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA").

12. Because Defendant is a corporation incorporated in the State of Delaware and conducting business in California, personal jurisdiction is established.

///

///

13. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) because Defendant, at all times herein mentioned, was doing business in the County of Los Angeles, State of California. Further, venue is proper in this district because Plaintiff has resided in this district at all times herein mentioned such that a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

14. Plaintiff is a natural person who resides in the City of Winnetka, County of Los Angeles, in the State of California.

15. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

16. Defendant Defendant is a corporation incorporated under the laws of the State of Delaware and authorized to do business in the State of California.

17. Defendant is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of furnishing to third parties reports of consumers' credit histories, commonly referred to as "credit reports," and defined as "consumer reports" under 15 U.S.C. § 1681a (hereinafter, "Credit Reports").

18. Defendant uses means and facilities of interstate commerce for the purpose of preparing and furnishing Credit Reports and, hence, is each a "consumer reporting agency" within the meaning of FCRA, 15 U.S.C. § 1681a(f).

19. The FCRA and the facts alleged in this Complaint relate to inaccurate and materially misleading credit information that was allowed to be reported by Defendant regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing

Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

### GENERAL CREDIT REPORTING INDUSTRY ALLEGATIONS

20. Plaintiff alleges that Defendant is familiar with credit reporting industry standards and subscribes thereto.

21. Plaintiff alleges that Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if Defendant reported in accordance with the recognized industry standard.

22. Plaintiff alleges that all actions alleged herein by Defendant were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

23. In the alternative, Plaintiff alleges that Defendant's actions were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

   a. **FICO**

24. FICO Inc. ("FICO") is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

25. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

26. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

27. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
28. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
29. There are 28 FICO Scores that are commonly used by lenders.
30. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").
31. The three largest CRAs are Defendant, Experian, and Trans Union.
32. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
33. There are five key factors that a FICO Score considers: 1) Payment history; 2) Amount of Debt; 3) Length of Credit History; 4) New Credit; and 5) Credit Mix.
34. Each of the five factors is weighted differently by FICO.
35. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
36. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

37. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

38. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

39. FICO Scores are entirely dependent upon information provided by Data Furnishers ("DFs") to CRAs.

### b. Metro 2

40. The Consumer Data Industry Association ("CDIA") is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

41. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumers' credit history.

42. The Consumer Data Industry Association's ("CDIA") Metro 2 format is *the* credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[1]

43. Therefore, the credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

---

[1] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

44. The CDIA is *the* expert on accurate credit reporting. In support of this allegation, Plaintiff avers the following:
    i. The CDIA offers an FCRA certificate program for all CRAs
    ii. The CDIA offers an FCRA awareness program for all CRAs.
    iii. The CDIA offers an FCRA certificate program for DFs.
    iv. The CDIA offers an FCRA awareness program for DFs.
    v. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    vi. The CDIA hosts workshops developed and authorized by Defendant, Experian, Innovis, and Trans Union.
    vii. The CDIA developed a credit reporting resource guide for accurately reporting credit.
45. The CDIA's Metro 2 is accepted by all CRAs.
46. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's Credit Reporting Resource Guide ("CRRG").
47. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
48. The CRRG is not readily available to the public. It can be purchased online for approximately $229.45.
49. Even if a buyer is ready and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.
50. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

51. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

52. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower, a consumer will be considered a higher credit risk, resulting in less favorable lending terms.

### c. Consumer Information Indicator ("CII")

53. Certain credit reporting industry standards exist that govern the relationship between the consumer and the furnisher.

54. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

55. The Consumer Information Indicator ("CII") is a critical *status* field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

56. Under Metro 2, the CII must be reported only on the consumer to whom the information applies.

57. It is the credit reporting industry standard to report a very specific CII upon the occurrence of critical events.

58. For accounts that are paid in full and closed, Metro 2 requires the Scheduled Monthly Payment amount to be $0.

59. Reporting otherwise is inaccurate and misleading since it appears that the consumer has a continuing monthly obligation.

60. This continuing monthly obligation will misrepresent the funds potentially available for the consumer to satisfy new and/or existing debts.

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

61. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

62. As explained in more detail below, Defendant failed to properly report the Scheduled Monthly Payments on Plaintiff's debt.

## FACTUAL ALLEGATIONS

63. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

64. Furthermore, Defendant conducted business within the State of California at all times relevant.

65. At some point prior to the filing of this matter, Plaintiff resolved a number of debts owed to various furnishers.

66. One such debt was owed to Amerinational Community Svsc ("ACS").

67. With regarding to ACS, Defendant is reporting that this account has a zero balance and is closed.

68. However, Defendant continues to report an $88.00 monthly payment owed to Amerinational Community Svcs.

69. Since Plaintiff's ACS account was paid in full and closed, Plaintiff's monthly payment should be reported as $0.

70. One such debt was also owed to Capital One N.A. ("Capital").

71. With regard to Capital, Defendant is reporting that this account has a zero balance and is paid and closed.

72. However, Defendant continues to report a $370.00 monthly payment owed to Capital.

73. Since Plaintiff's Capital account was paid in full and closed, Plaintiff's monthly payment should be reported as $0.

74. Another such debt was owed to First City Credit Union ("FCCU").

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

75. With regard to FCCU, Defendant is reporting that this account has a zero balance and is paid and closed.

76. However, Defendant continues to report a $163.00 monthly payment owed to FCCU.

77. Since Plaintiff's FCCU account was paid in full and closed, Plaintiff's monthly payment should be reported as $0.

78. Another such debt was owed to Gateway Bank FSB ("Gateway").

79. With regard to Gateway, Defendant is reporting that this account has a zero balance and is paid and closed.

80. However, Defendant continues to report a $1,061.00 monthly payment owed to Gateway.

81. Since Plaintiff's Gateway account was paid in full and closed, Plaintiff's monthly payment should be reported as $0.

82. Another such debt was owed to Nissan Acceptance Corp. ("Nissan").

83. With regard to Nissan, Defendant is reporting that this account has a zero balance and is paid and closed.

84. However, Defendant continues to report a $335.00 monthly payment owed to Nissan.

85. Since Plaintiff's Nissan account was paid in full and closed, Plaintiff's monthly payment should be reported as $0.

86. Another two debts were owed to Toyota Motor Credit Corp. ("Toyota").

87. With regard to both Toyota accounts, Defendant is reporting that the accounts have a zero balance and are paid in full.

88. However, Defendant continues to report $325.00 and $327.00 monthly payments owed to Toyota in connection with the two accounts.

89. Since Plaintiff's Toyota accounts are both paid in full and closed, Plaintiff's monthly payments should be reported as $0.

90. Another such debt also includes a debt owed to Universal Payment Corp. ("Universal").
91. With regard to Universal, Defendant is reporting that the account has a zero balance and is paid in full.
92. However, Defendant continues to report a $232.00 monthly payment owed to Universal.
93. Since Plaintiff's Universal account is paid in full and closed, Plaintiff's monthly payments should be reported as $0.
94. To report these continuing monthly payment obligations is patently incorrect, misleading, and fails to comply with the Metro 2 Guidelines.
95. This inaccurate reporting will adversely affect credit decisions since credit guarantors are made aware of Plaintiff's current income during the application process.
96. By reporting continuing monthly payments as opposed to a $0 monthly payment, Defendant misrepresents Plaintiff's monthly financial obligations and gives the false impression that Plaintiff has less funds available to satisfy the new credit currently being applied for.
97. Defendant's inaccurate and negative reporting damaged Plaintiff's creditworthiness.
98. Plaintiff incurred monetary expenses, time, and effort in an attempt to dispute and seek correction of the inaccuracies on Defendant's Credit Report.
99. Plaintiff's right to be able to apply for credit based on accurate information has been violated, placing Plaintiff at increased risk of not being able to obtain valuable credit and adversely affecting Plaintiff's credit rating.
100. Accordingly, Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b).

## CLASS ACTION ALLEGATIONS

101. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class").

102. Plaintiff represent, and is a member of the Class, consisting of:
    All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

103. Plaintiff also represents and is a member of the Sub-Class, consisting of:
    All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account with Amerinational Community Svcs. that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

104. Plaintiff also represents and is a member of the Sub-Class, consisting of:
    All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account with Capital One N.A. that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

105. Plaintiff also represents and is a member of the Sub-Class, consisting of:
    All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account with First City Credit Union that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

106. Plaintiff also represents and is a member of the Sub-Class, consisting of:
    All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account with Gateway Bank FSB that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

///

///

107. Plaintiff also represents and is a member of the Sub-Class, consisting of:
   All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account with Nissan Acceptance Corp. that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

108. Plaintiff also represents and is a member of the Sub-Class, consisting of:
   All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account with Toyota Motor Credit Corp. that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

109. Plaintiff also represents and is a member of the Sub-Class, consisting of:
   All persons with an address within the United States whose consumer credit report includes: (i) a zero balance; (ii) an account with Universal Payment Corp. that is paid in full and/or closed; and (iii) where Defendant reported a monthly payment obligation.

110. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. This matter should therefore be certified as a Class action to assist in the expeditious litigation of this matter.

111. Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

112. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, engaged in illegal and deceptive practices, when it reported a monthly payment obligation for accounts that have a zero balance and are closed and/or paid in full under 15 U.S.C. § 1681 *et seq.*, Plaintiff and the Class members were damaged thereby.

113. This suit seeks only recovery of actual and statutory damages on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

114. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendant's records or Defendant's agents' records.

115. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   i. Whether, within the two years prior to the filing of this Complaint, Defendant or its agents reported any monthly payment obligations for consumers on accounts that had a zero balance and were closed and/or paid in full;

   ii. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violations;

   iii. Whether Plaintiff and the Class members suffered actual damages as a result of Defendant's conduct;

   iv. Whether Plaintiff and the Class members are entitled to statutory damages as a result of Defendant's conduct;

   v. Whether Plaintiff and the Class members are entitled to injunctive relief;

   vi. Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees and costs;

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

vii. Whether Plaintiff will fairly and adequately protect the interest of the Class; and,

viii. Whether Plaintiff's counsel will fairly and adequately protect the interest of the Class.

116. As a person who has suffered an inaccurate reporting by Defendant on his credit report, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interest of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

117. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

118. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Fair Credit Reporting Act.

119. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for FCRA violations are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

120. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate declaratory relief with respect to the Class as a whole.

# FIRST CAUSE OF ACTION
## WILLFUL FAILURE TO EMPLOY REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY OF CREDIT REPORTS IN VIOLATION OF 15 U.S.C. § 1681E(B)

121. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth here.

122. Defendant is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing consumer reports, as that term is defined in 15 U.S.C. § 1681a(d), commonly referred to as Credit Reports, and furnishing these Credit Reports to third parties.

123. Defendant uses means and facilities of interstate commerce for the purpose of preparing and furnishing Credit Reports and, hence, are "consumer reporting agencies" within the meaning of 15 U.S.C. § 1681a(f).

124. In preparing Credit Reports, Defendant has failed to use reasonable procedures to, as required by law, "assure maximum possible accuracy" of information relating to the discharged debts of Plaintiff in violation of 15 U.S.C. § 1681e(b).

125. As a result of Defendant's failure to use reasonable procedures in accordance with the requirements of 15 U.S.C. § 1681e(b), Defendant has erroneously reported as due and legally owed one or more of the satisfied debts of Plaintiff.

126. Defendant's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is willful within the meaning of 15 U.S.C. § 1681n(a).

127. As a result of Defendant's willful noncompliance with the requirements of 15 U.S.C. § 1681e(b), Plaintiff is entitled to statutory and punitive damages under 15 U.S.C. § 1681n(a)(1) and (a)(2).

128. As a further result of Defendant's willful noncompliance with the requirements of 15 U.S.C. § 1681e(b) Plaintiff's statutory rights to be able to

apply for credit based on accurate information have been violated, placing Plaintiff at increased risk of not being able to obtain valuable credit and adversely affecting their credit ratings and causing other actual damages.

129. Defendant should have known that Defendant's reporting was inaccurate since the furnisher(s) at issue herein reported that the accounts were paid in full and closed.

130. The industry standard pursuant to Metro 2 in such a situation is to report a $0 scheduled monthly payment.

## SECOND CAUSE OF ACTION
### NEGLIGENT FAILURE TO EMPLOY REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY OF CREDIT REPORTS IN VIOLATION OF 15 U.S.C. § 1681E(B)

131. The allegations set forth in the paragraphs above are realleged and incorporated by reference as if fully set forth here.

132. In preparing credit reports relating to Plaintiff, Defendant has failed to follow reasonable procedures to assure maximum accuracy of information they put in Credit Reports in violation of 15 U.S.C. § 1681e(b).

133. As a result of Defendant's failure to follow reasonable procedures in accordance with the requirements of 15 U.S.C. § 1681e(b), Defendant has erroneously reported one or more of the satisfied debts of Plaintiff as due and legally owed.

134. Defendant's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is negligent within the meaning of 15 U.S.C. § 1681o(a).

135. As a result of Defendant's negligent violation of the requirements of 15 U.S.C. § 1681e(b), Plaintiff's statutory rights to be able to apply for credit based on accurate information have been violated, placing Plaintiff at increased risk of not being able to obtain valuable credit and adversely affecting their credit ratings and causing other actual damages.

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

## PRAYER FOR RELIEF

136. Plaintiffs respectfully requests the Court grant Plaintiffs the following relief against Defendant:

- An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding Plaintiff is a proper Class Representative, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

- That the practices and procedures of Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under the FCRA;

- That, in accordance with 15 U.S.C. §§ 1681n(a) and 1681o(a), judgment be entered in favor of Plaintiff and against Defendant for statutory and/or punitive damages in amounts to be determined at trial;

- That, in accordance with 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), Plaintiff be awarded the costs of this action together with reasonable attorney's fees; and,

- That Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as may be deemed equitable and just.

Dated: July 10, 2018                                              Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: ___/s/ Matthew M. Loker___
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF

KAZEROUNI LAW GROUP, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420